IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRENDA TAITE,

    Plaintiff,

v.                                                                                     Civ. No. 13-792 JP/RHS

THERESA RAMOS, individually and
in her official capacity, and UNIVERSITY
OF NEW MEXICO BOARD OF REGENTS,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

DEFENDANTS UNIVERSITY OF NEW MEXICO BOARD OF REGENTS (Board of Regents) AND THERESA RAMOS' (Ms. Ramos) MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY (Motion to Dismiss) (Doc. No. 42) asks for dismissal of Plaintiff Brenda Taite's official capacity claims against Ms. Ramos and all claims against the Board of Regents based on Eleventh Amendment immunity. PLAINTIFF'S OBJECTION TO DEFENDANTS UNIVERSITY OF NEW MEXICO BOARD OF REGENTS AND THERESA RAMOS' MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY (Response) (Doc. No. 46) asserts that Eleventh Amendment immunity does not apply to Plaintiff's Title VII claims against the remaining two Defendants.[1] DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY (Reply) (Doc. No. 49) concedes that Eleventh Amendment

---

[1] *See* DEFENDANTS' FIRST MOTION TO DISMISS: CLAIMS AGAINST UNIVERSITY OF NEW MEXICO AND UNIVERSITY OF NEW MEXICO OFFICE OF EQUAL OPPORTUNITY (Doc. No. 33), to which Plaintiff withdrew any objection (Doc. No. 40). *See* ORDER (Doc. No. 39) (dismissing all claims against Defendants University of New Mexico and University of New Mexico Office of Equal Opportunity).

1

immunity does not bar Plaintiff's Title VII claims but argues that Plaintiff's claims brought under 42 U.S.C. §§ 1981 and 1983 should be dismissed based on Eleventh Amendment immunity. In addition, Defendants urge that Plaintiff's request for prospective injunctive relief against either the Board of Regents or Ms. Ramos "fails as a matter of law." Reply at 3.

## Background

On about April 30, 2012, the University of New Mexico (UNM) hired Plaintiff as an Equal Opportunity Specialist in Albuquerque, New Mexico and terminated her employment on about July 9, 2012. *See* PLAINTIFF'S AMENDED COMPLAINT (Complaint) at ¶ 4[2] (Doc. No. 10). Subsequently, Plaintiff received a contract job offer as a lecturer at UNM's campus in Gallup, New Mexico. *Id.* at ¶ 10. She began teaching at the UNM-Gallup campus in September 2012, but alleges she was not paid in accordance with her contract. *Id.* at ¶¶ 12, 27. Plaintiff did not continue at UNM-Gallup after she purportedly was not paid under the terms of her contract.

Plaintiff claims that Ms. Ramos, acting as Director of UNM's Office of Equal Opportunity, subjected Plaintiff to unlawful treatment based on Plaintiff's race (African American), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, the Fourteenth Amendment of the United States Constitution, and the New Mexico Human Rights Act (NMHRA). Plaintiff also asserts that Defendants violated privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA). *Id.* at ¶¶ 5, 24, 28, 39-44. More specifically, Plaintiff alleges that Ms. Ramos berated and harassed Plaintiff, created a hostile work environment, did not properly train Plaintiff in her position of Equal Opportunity Specialist, did not treat her like other similarly situated UNM employees, and retaliated against

---

[2] Plaintiff's Complaint alleges that Plaintiff was terminated by Ms. Ramos on July 9, <u>2013</u>, rather than July 9, 2012, but it appears from Plaintiff's own Amended Complaint (Doc. No. 10 at ¶ 10) and other pleadings that Plaintiff did not work as an Equal Opportunity Specialist for University of New Mexico after July 9, 2012. *See* Defendants' First Motion to Dismiss at 1 (Doc. No. 33).

her for filing an EEOC complaint. *Id.* at ¶¶ 6-9, 19, 22-23, 25. Plaintiff contends that when she was hired to work as a lecturer at UNM-Gallup, Ms. Ramos tried to block UNM-Gallup from hiring Plaintiff, and that Ms. Ramos took actions that interfered with Plaintiff's start date at UNM-Gallup. *Id.* at ¶¶ 10-11.

Defendants contend that they terminated Plaintiff during her probationary period for unsatisfactory work performance and deny unlawful discrimination or retaliation. Joint Status Report at 3–4 (Doc. No. 34). Defendants assert that Plaintiff voluntarily chose not to renew her contract at UNM-Gallup. *Id.* at 5.

Plaintiff's Complaint sets out four separate claims: (1) Title VII race discrimination against both Defendants; (2) Title VII retaliation against both Defendants; (3) civil rights violations under 42 U.S.C. §§ 1981 and 1983 against Defendant Ramos in her official and individual capacities; and (4) violation of Plaintiff's privacy rights under HIPAA against Defendant Ramos in her official and individual capacities.[3] Her Complaint also may be read to include claims under the NMHRA and the Fourteenth Amendment,[4] as well as a claim for injunctive relief. Plaintiff seeks an award of monetary damages for "lost wages and benefits" in the amount of 1.5 million dollars and punitive damages. *Id.* at 10–11.

---

[3] As best as the Court can tell, Counts 3 and 4 are asserted against only Ms. Ramos. Complaint at ¶¶ 38, 44. However, because Plaintiff is pro se, the Court will analyze Counts 3 and 4 as if they were asserted against both remaining Defendants. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)).

[4] Defendants did not specifically ask that the Fourteenth Amendment claim be dismissed based on Eleventh Amendment immunity. But, the Fourteenth Amendment itself does not provide a direct cause of action and a claim must be brought under 42 U.S.C. § 1983. *Gonzales v. City of Albuquerque*, 849 F. Supp. 2d 1123, 1157 (D.N.M. 2011), *aff'd*, 701 F.3d 1267 (10th Cir. 2012). Any Fourteenth Amendment claim under § 1983 must be dismissed on Eleventh Amendment immunity grounds, *see infra,* and any separate allegations of a violation of the Fourteenth Amendment fail to state a claim. *Robinson v. Bd. of Regents of the Univ. of Colo.*, 390 F. Supp. 2d 1011, 1017 (D. Colo. 2005). The Court will dismiss Plaintiff's Fourteenth Amendment claims without prejudice.

## Discussion

Defendants argue that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6) and, based on the pleadings, under Fed. R. Civ. P. 12(c).[5] *See also Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). Defendants contend Plaintiff has failed to state a claim with respect to violations of §§ 1981 and 1983 and HIPAA because Defendants have Eleventh Amendment immunity.[6] Motion at 1. Defendants initially urge dismissal of Plaintiff's official capacity claims against Ms. Ramos and "all claims" against the Board of Regents. Motion to Dismiss at 1.

Plaintiff's Response focuses on the Title VII claims and the request for injunctive relief. Plaintiff asserts, in part, that Congress had abrogated Eleventh Amendment immunity with respect to Title VII claims. This is true. *Nevada Dep't of Human Res. v. Hibbs* 538 U.S. 721, 729-30 (2003) (finding that Congress responded to a history of employment discrimination by abrogating States' sovereign immunity in Title VII cases).

Defendants' Reply narrowed their assertions of Eleventh Amendment immunity to the 42 U.S.C. §§ 1981 and 1983 and HIPAA claims (Counts 3 and 4). Defendants conceded that the Title VII claims of discrimination and retaliation (Counts 1 and 2) against Ms. Ramos in her

---

[5] The same standard of review applies to motions brought under Rule 12(b)(6) and Rule 12(c). *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir.), *cert. denied,* 558 U.S. 1048 (2009).
[6] A claim that is barred by Eleventh Amendment immunity is subject to dismissal without prejudice for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Martin v. Kansas*, 190 F.3d 1120, 1126 (10th Cir. 1999) (noting that a state's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court), *overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Shue v. Lampert,* 2014 WL 4358456, at *1 (10th Cir. Sept. 4, 2014) (a dismissal based on Eleventh Amendment immunity must be without prejudice) (unpublished). The dismissal of a claim without prejudice allows a plaintiff to pursue the claim in state court.

official capacity are not barred by Eleventh Amendment immunity.[7] Reply at 3. Thus, the Court addresses Defendants' Motion to Dismiss with respect to the § 1981, § 1983, and HIPAA claims (Counts 3 and 4) and Plaintiff's request for prospective injunctive relief.

> A.  *42 U.S.C. §§ 1981 and 1983 Claims Against Board of Regents and Ms. Ramos, as Sued in her Official Capacity[8] (Count 3)*

The Eleventh Amendment to the U.S. Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Supreme Court precedent has extended the Amendment's applicability to suits by citizens against their own states. *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363–64 (2001). In addition, state agencies functioning as "arms of the state" are immune from suit under the Eleventh Amendment. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977). Thus, the Eleventh Amendment does not allow federal courts to hear suits against state entities or agencies acting as arms of the state unless the state waived its immunity. *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

It is well-settled that the University of New Mexico and its Regents are arms of the State and, therefore, entitled to Eleventh Amendment immunity. *Buchwald v. Univ. of N.M. Sch. of*

---

[7] Plaintiff brings the Title VII claims (Counts 1 and 2) against Ms. Ramos in her individual and official capacities. However, "Title VII suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate." *Sauers v. Salt Lake Cnty*, 1 F.3d 1122, 1125 (10th Cir. 1993). In addition to Title VII claims, the Complaint, at ¶ 5, may be interpreted to assert discrimination and retaliation claims under the NMHRA that allows official and individual capacity claims. *See Orr v. City of Albuquerque,* 531 F.3d 1210, 1214 n.2 (10th Cir. 2008) (explaining that the plaintiffs could proceed against the defendant in her individual capacity under the NMHRA while, under Title VII, they could proceed against the defendant only in her official capacity) (citations omitted). Thus, the official capacity Title VII claim against Ms. Ramos will proceed, as will both the individual and official capacity NMHRA claims against Ms. Ramos. The Court cautions that while a party may plead alternative theories of recovery, a party cannot recover duplicate damages for the same wrong. *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011).

[8] Defendants did not request dismissal of the claims against Ms. Ramos as sued in her individual capacity. Thus, unless otherwise indicated, the individual capacity claims against Ms. Ramos may proceed.

*Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998) (Court had "no doubt" that UNM School of Medicine, its Regents, and the Committee on Admissions were "arms of the state," entitled to Eleventh Amendment immunity); *Barrett v. Univ. of N.M. Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. Apr. 21, 2014) (unpublished) (UNM's Board of Regents and its members sued in their official capacities were immune to suit under the Eleventh Amendment).

Ms. Ramos is also entitled to Eleventh Amendment immunity with respect to the official capacity claims against her. "[A] suit against a state official in . . . her official capacity . . . is no different than a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the Board of Regents and Ms. Ramos, as sued in her official capacity, are immune from suit unless the State or Congress has waived Eleventh Amendment immunity.

There is no showing that the Board of Regents or Ms. Ramos has expressly or unequivocally waived their Eleventh Amendment immunity. *See V–1 Oil Co. v. Utah Dep't of Public Safety*, 131 F.3d 1415, 1421 (10th Cir. 1997) (requiring that waiver be express or unequivocal). Instead, Defendants have invoked their right to Eleventh Amendment immunity.

For Congress to waive Eleventh Amendment immunity, it must do so unequivocally, and it must "act pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363–64 (citation omitted). The remaining question is whether Congress has abrogated the Defendants' Eleventh Amendment immunity through a clear expression of its intent to waive immunity.

There is no need for lengthy discussion in this area of the law as to Plaintiff's §§ 1981 and 1983 claims against the Board of Regents and Ms. Ramos.

> With regard to the § 1981 and § 1983 claims, extended analysis is not necessary; it is well-settled in the Tenth Circuit that Congress did not waive states' Eleventh Amendment immunity through either § 1981, or § 1983

*Robinson*, 390 F. Supp. 2d at 1016 (internal citations omitted).

Thus, the Board of Regents and Ms. Ramos, as sued in her official capacity, are entitled to Eleventh Amendment immunity from Plaintiff's 42 U.S.C. § 1981 and § 1983 claims. Accordingly, the Court will grant Defendants' Motion to Dismiss the § 1981 and § 1983 claims (Count 3) against the Board of Regents and Ms. Ramos, in her official capacity.

      B.    *HIPAA Privacy Claims Against Board of Regents and Ms. Ramos, as sued in her Official Capacity (Count 4)*

In enacting HIPAA, Congress "mandated the establishment of national standards for protection of the privacy of individually identifiable health and medical information." *Schneider v. Cooper*, 2010 WL 537760, at *5 (Feb. 16, 2010 D. Colo.) (unpublished). The Department of Health and Human Services promulgated rules and regulations governing uses and disclosures of protected health information by health care providers in accordance with the statutory mandate. *See* 45 C.F.R. 160.101 *et seq*. The HIPAA "privacy rule," as it is sometimes referred to, is found at 45 C.F.R. 164.512 (2013). *See Brooks v. Hinzman*, 2014 WL 1047948, at *2 (D. Kan. Mar. 17, 2014) (unpublished).

Plaintiff alleges that after she had worked six weeks as an Equal Opportunity Specialist, Ms. Ramos demanded that Plaintiff undergo counseling at UNM Counseling and Referral Services (UNMCARS). Ms. Ramos purportedly told Plaintiff that Ms. Ramos would give her a bad performance review if Plaintiff did not attend counseling. Complaint at ¶ 39. Plaintiff saw a counselor at UNMCARS and Plaintiff contends that her counselor disclosed to Ms. Ramos the contents of Plaintiff's therapy session "because the plaintiff was fired the next week after meeting with [the counselor]." *Id.* at ¶ 42. Plaintiff asserts that Ms. Ramos violated the "HIPAA Privacy Rule," Complaint at ¶ 5, although Plaintiff fails to cite a specific statutory provision or regulation that was allegedly violated.

The Tenth Circuit Court of Appeals has made clear that "HIPAA does not create a private right of action for alleged disclosures of confidential medical information." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)). Indeed, all courts to consider the matter have held that HIPAA does not create a private right of action. *Keltner v. Bartz*, 2013 WL 761157, at *4 (D. Kan. Feb. 27, 2013) (unpublished) (collecting cases). Therefore, because Plaintiff has no private right of action under HIPAA, the alleged HIPAA violations fail to state a claim. Accordingly, the Court will grant Defendants' Motion to Dismiss the HIPAA claim against Board of Regents and Ms. Ramos.[9]

C. *Injunctive Relief Claim (Complaint at 10)*

Plaintiff argues that exceptions to Eleventh Amendment immunity set out in *Ex parte Young*, 209 U.S. 123 (1908) allow her claim for prospective injunctive relief against Defendants. Response at 2–3. The case of *Ex parte Young* recognized an exception to Eleventh Amendment immunity for lawsuits brought "against a state official in her official capacity seeking only prospective relief." *Barrett*, 562 F. App'x at 494 (citation omitted).

> The exception is very narrow, however, applying only to prospective relief and requiring an ongoing violation of federal law. A plaintiff must adequately allege the individual official's duty to enforce the statute in question and a demonstrated willingness to do so. [Plaintiff's] general allegations of responsibility to enforce the [Americans with Disabilities Act] are insufficient because individual Board members are not empowered to act individually, but must act as a "body corporate."

---

[9] Defendants argue in their Reply that Plaintiff failed to respond to portions of their Motion to Dismiss, and that Plaintiff, therefore, consented to the dismissal of Counts 3 and 4. Reply at 1. However, as stated, the Court liberally construes Plaintiff's pro se pleadings and briefing. In addition, Defendants moved to dismiss the HIPAA claim (Count 4) on the ground that Plaintiff generally failed to state a claim due to Eleventh Amendment immunity. Defendants did not argue that there was no private cause of action under HIPAA. Notwithstanding Defendants' failure to identify the proper legal basis for dismissal of the HIPAA claim, the Court may evaluate an *in forma pauperis* proceeding "at any time" and is required to dismiss allegations that fail to state a claim. 28 U.S.C. § 1915(e)(23)(B)(ii). *See* Doc. No. 6 (Order allowing Plaintiff to proceed *in forma pauperis*).

*Id.* (citations omitted).

Plaintiff's request that "the Court enjoin Defendants from its discriminatory practices" is unclear as to whether Plaintiff seeks prospective equitable relief or retroactive equitable relief. The *Ex parte Young* exception to Eleventh Amendment immunity "applies only to prospective relief" and may not be used to obtain a declaration that "a state officer" has violated a plaintiff's federal rights in the past. *Id.* at 495 (citation omitted). The Court will construe Plaintiff's Complaint to be a request for prospective relief, *i.e.,* that she asks the Court to enjoin Defendants from ongoing discrimination or retaliation.

The first problem with the injunctive relief claim is that the *Ex parte Young* exception applies to "state officers," not to the State or arms of the State such as the Board of Regents. Therefore, to the extent Plaintiff seeks injunctive relief against the Board of Regents, it is an arm of the State entitled to Eleventh Amendment immunity. *See id.* (*Ex parte Young* exception "enables federal courts to vindicate federal rights and <u>hold state officials</u> responsible to the supreme authority of the United States" (internal quotations and citations omitted) (emphasis added)).

With respect to a claim for injunctive relief against Ms. Ramos, Plaintiff has not alleged an "ongoing violation of federal law." Indeed, Plaintiff no longer works for UNM. In addition, Plaintiff has not alleged that Ms. Ramos has a "duty to enforce the statute[s] in question and a demonstrated willingness to do so." Plaintiff's minimal and summary allegations in support of injunctive relief are insufficient to state a claim for which relief can be granted. Thus, the Court will grant Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief against the Board of Regents and Ms. Ramos.

9

**Conclusion**

Plaintiff's Title VII claims of race discrimination and retaliation (Counts 1 and 2) against the Board of Regents and Ms. Ramos, in her official capacity, will proceed. To the extent that Plaintiff asserts claims of discrimination and retaliation under the New Mexico Human Rights Act against the Board of Regents and Ms. Ramos, in her official and individual capacities, those claims will proceed. Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims (Count 3) against Ms. Ramos in her individual capacity will proceed.

Plaintiff's Title VII claims of race discrimination and retaliation (Counts 1 and 2) against Ms. Ramos, in her individual capacity, will be dismissed with prejudice for failure to state a claim. Plaintiff's claims under the Fourteenth Amendment (Complaint at 2) and 42 U.S.C. §§ 1981 and 1983 (Count 3) against the Board of Regents and Ms. Ramos in her official capacity will be dismissed without prejudice based on Defendants' entitlement to Eleventh Amendment immunity. Plaintiff's HIPAA privacy claim (Count 4) against both Defendants will be dismissed with prejudice for failure to state a claim, and Plaintiff's claim for prospective injunctive relief (Complaint at 10) against both Defendants will be dismissed with prejudice for failure to state a claim.

IT IS ORDERED that DEFENDANTS UNIVERSITY OF NEW MEXICO BOARD OF REGENTS AND THERESA RAMOS' MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY (Doc. No. 42) is GRANTED in part and DENIED in part, with the result that:

1) Plaintiff's Title VII claims of race discrimination and retaliation (Counts 1 and 2) against Ms. Ramos, in her individual capacity, are DISMISSED with prejudice;

2)      Plaintiff's Fourteenth Amendment claim against Defendants Board of Regents and Ms. Ramos in her individual and official capacities (Complaint at 2) is DISMISSED without prejudice;

3)      Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 (Count 3) against the Board of Regents and Ms. Ramos in her official capacity are DISMISSED without prejudice;

4)      Plaintiff's HIPAA privacy claim (Count 4) against Defendant Board of Regents and Ms. Ramos in her individual and official capacities is DISMISSED with prejudice; and

5)      Plaintiff's claim for prospective injunctive relief (Complaint at 10) against Defendant Board of Regents and Ms. Ramos in her individual and official capacities is DISMISSED with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE