**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

BRENDA TAITE,

     Plaintiff,

v.                                                                          Civ. No. 13-792 JP/RHS

THERESA RAMOS, individually and
in her official capacity, and UNIVERSITY
OF NEW MEXICO BOARD OF REGENTS,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

     DEFENDANT THERESA RAMOS' MOTION FOR SUMMARY JUDGMENT BASED

ON QUALIFIED IMMUNITY (Motion for Summary Judgment) (Doc. No. 47) seeks dismissal

of pro se Plaintiff Brenda Taite's (Plaintiff) 42 U.S.C. §§ 1981 and 1983 claims (Count 3).[1] In

PLAINTIFF'S MEMORANDUM OBJECTION TO DEFENDANT'S THERESA RAMOS'

MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Response)

(Doc. No. 59), Plaintiff argues that the Court should deny Defendant Theresa Ramos' (Defendant

Ramos or Ms. Ramos)  request for summary judgment. In DEFENDANT THERESA RAMOS'

REPLY TO PLAINTIFF'S OBJECTION TO RAMOS' MOTION FOR SUMMARY

JUDGMENT BASED ON QUALIFIED IMMUNITY (Reply) (Doc. No. 60), Defendant Ramos

---

[1]Shortly after briefing this Motion for Summary Judgment, Defendant Ramos filed a separate Motion for Summary Judgment directed at Plaintiff's Title VII claims of discrimination and retaliation (Doc. No. 62). It is unclear why Defendant Ramos did not file a single motion addressing all claims, particularly in view of Defendant Ramos' reliance on virtually identical exhibits attached to both motions. Because the Court determines that genuine issues of material fact exist with respect to the §§ 1981 and 1983 claims of discrimination and retaliation, *see infra*, Defendant Ramos may wish to withdraw the subsequent motion seeking dismissal of the Title VII claims and re-file it with adequate support, if possible.

asserts that Plaintiff failed to raise genuine disputes of material fact as to the §§ 1981 and 1983 claims.

**Background**

On April 30, 2012, the University of New Mexico (UNM) hired Plaintiff as an Equal Opportunity Specialist in Albuquerque, New Mexico. Several months later, on July 9, 2012, UNM terminated her employment. *See* PLAINTIFF'S AMENDED COMPLAINT (Amended Complaint) at ¶ 4.[2] In the Amended Complaint, Plaintiff, an African American, alleges that Defendants discriminated against her based on race, retaliated against her for filing EEOC charges, and violated her constitutional rights. Plaintiff asserts a number of claims against Defendants UNM Board of Regents and Ms. Ramos.[3] Defendant Ramos argues that she terminated Plaintiff's employment, within the six-month probation period, for legitimate, non-discriminatory business reasons. Motion for Summary Judgment at 16.

For purposes of the Motion for Summary Judgment, the Court construes the pertinent claims as follows: 1) Defendant Ramos allegedly violated 42 U.S.C. § 1983 by engaging in racial discrimination and retaliation against Plaintiff; and (2) Defendant Ramos allegedly violated 42 U.S.C. § 1981 based on the same allegations of racial discrimination and retaliation.

---

[2] Plaintiff's Complaint alleges that Ms. Ramos terminated Plaintiff's employment on July 9, 2013, rather than July 9, 2012, but it is clear that Plaintiff did not work as an Equal Opportunity Specialist for UNM after July 9, 2012. *See* Complaint at ¶ 10; Motion for Summary Judgment; Response.
[3] In a MEMORANDUM OPINION AND ORDER (9/25/14 Order) (Doc. No. 57), the Court dismissed Plaintiff's §§ 1981 and 1983 claims against Defendant Ramos in her official capacity but allowed the individual capacity claims to proceed. *See* 9/25/14 Order at 10–11 (specifying which claims were to proceed and which claims were dismissed).

Insofar as Defendant Ramos seeks dismissal of a hostile work environment claim, the Court cannot make a decision without adequate briefing.[4] Before filing another motion for summary judgment, the parties should confer in order to determine if Plaintiff has a legitimate claim of hostile work environment. *See, e.g., Faragalla v. Douglas Cnty Sch. Dist. RE 1,* 411 F. App'x 140, 152 (10th Cir. Jan. 12, 2011) (unpublished) (to present a cognizable hostile work environment claim, a plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[;]" additionally, the "harassment must be based on the plaintiff's protected class or stem from discriminatory animus toward her protected class.") (citations omitted)).

It also appears that Defendant Ramos seeks dismissal of two claims that Plaintiff did not raise in her Amended Complaint: (1) a violation of Plaintiff's Fourteenth Amendment right to procedural due process protections in relation to a property interest of continued employment and (2) a violation of Plaintiff's right to equal protection under the Fourteenth Amendment. Motion for Summary Judgment at 6–9. Nothing in the Amended Complaint alleges that Plaintiff

---

[4] Plaintiff's Amended Complaint alleges that Defendant Ramos created a hostile work environment. Amended Complaint ¶ 36. Defendant Ramos acknowledges the claim in her opening brief. Motion for Summary Judgment at 1. Yet neither party expressly states why the claim should or should not withstand summary judgment, nor do the parties discuss the required elements of a hostile work environment claim.

had a legitimate interest in continued employment at UNM or that Plaintiff was terminated

without specific due process protections. *See* Amended Complaint. [5]

The same is true with respect to an equal protection claim under the Fourteenth

Amendment. Nothing in Count 3 of Plaintiff's Amended Complaint specifically alleges an equal

protection cause of action. Yet, in briefing, Defendant Ramos primarily discusses a possible

Equal Protection Clause claim instead of analyzing the pertinent elements of a race

discrimination claim under §§ 1983 and 1981, a claim that Plaintiff did clearly allege.

The Court disregards Defendant Ramos' arguments concerning claims that Plaintiff did

not assert in the Amended Complaint. *See* 9/25/14 Order (listing claims that survived

Defendants' Motion to Dismiss).

### Summary Judgment

## I.   Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). When applying this standard, the Court examines the factual record and reasonable

inferences therefrom in the light most favorable to the party opposing summary judgment.

*Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990).

The party seeking summary judgment bears the initial burden of "show[ing] that there is an

---

[5] In response to Defendant Ramos' position that Plaintiff did not have a legally protected property interest in continued employment, Plaintiff asserts that she had a "term contract" with UNM, thereby supporting a legitimate property interest in continued employment for at least a year. Response at 20–21. It is true that UNM extended a one-year term contract to Plaintiff, as evidenced by the offer letter to Plaintiff, Doc. No. 59-6; however, the offer letter also clearly states that during the probation period of 4/30/12 to 10/29/12, Plaintiff's status was considered "at-will" and could be terminated with or without cause at any time. Under these circumstances, where Plaintiff does not assert the claim in her Amended Complaint and where Plaintiff attaches a document that tends to contradict a property interest in continued employment, the Court finds it would be futile to allow further amendment of the Amended Complaint. This is reinforced by the fact that Plaintiff alleged a breach of employment contract claim in her initial Complaint and then removed that claim in her Amended Complaint.

absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

The Court liberally construes a pro se plaintiff's filings. However, while a court affords a pro se litigant's filings some leniency, even a pro se litigant is expected to "follow the same rules of procedure that govern other litigants." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). The Court observes that Plaintiff's Response does not set forth a "concise statement of the material facts cited by the movant to which [Plaintiff] contends a genuine issue does exist," nor does Plaintiff "refer with particularity to those portions of the record upon which [she] relies," and "state the number of the movant's fact that is disputed." D.N.M.LR-Civ. 56.1(b). However, Plaintiff provides an extensive, although repetitive, list of "disputed material facts," that she supports with her affidavit (Taite Aff.).

The Court rejects Defendant Ramos' position that Plaintiff "created a narrative of 'facts' [in her Response] which do [sic] not cite to evidence or sworn testimony outside of the pleadings . . ." and that these facts "merely cite back to the unsupported allegations in Plaintiff's complaint . . . ." Reply at 2. At least some of Plaintiff's proposed material facts cite to Plaintiff's attached affidavit and other exhibits. *See* Response at 8, 12; Taite Aff. Similarly, the Court finds unpersuasive Defendant Ramos' argument that the Court should ignore what Defendant Ramos

describes as Plaintiff's vague, nonspecific, and self-serving affidavit. Reply at 3. Plaintiff's

affidavit contains specific facts about Plaintiff's work that are within Plaintiff's personal

knowledge. Taite Aff. *See Williams v. Shields,* 77 F. App'x 501, 503 (10th Cir. Oct. 16, 2003)

(unpublished) (despite the defendant's labeling of the plaintiff's affidavit as conclusory and self-

serving, the Court found that an affidavit setting forth specific facts based on personal

knowledge must be considered in opposing summary judgment) (citation omitted). As discussed

*infra*, Plaintiff's affidavit is sufficient to raise genuine disputes of material fact with respect to

some claims.

     The Court further observes that Plaintiff did not authenticate the exhibits attached to her

Response, including email communications and a July 25, 2013 letter addressed "To Whom it

May Concern" from a former co-worker complaining about Ms. Ramos. Similarly, Defendant

Ramos initially did not authenticate any of her attached exhibits, including 19 pages of unsigned,

handwritten notes that contain no UNM identification or letterhead. However, Defendant Ramos

later attached to her Reply the Affidavit of Patricia Martinez (Martinez Aff.). In her affidavit,

Martinez, apparently a co-worker of Plaintiff, states that she provided specific training to

Plaintiff, and that Ms. Martinez authored and maintained 17 of the 19 pages of attached

handwritten notes. Whether authenticated or not, the Court will consider both parties' attached

exhibits although the exhibits do not necessarily raise genuine disputes of material fact for

purposes of summary judgment. *See Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577

F.3d 1164, 1170–71 (10th Cir. 2009) (the court did not require an affidavit to authenticate every

document submitted in summary judgment filings, particularly where documents produced

during discovery were on the letterhead of the producing party, but the court further noted that

"[i]t is well settled in this circuit that we can consider only admissible evidence in reviewing an

order granting summary judgment") (citations omitted).[6]

## II.     Material Facts

The Court takes the following material facts from the parties' briefs and resolves all

disputed facts in Plaintiff's favor.

### A.     *UNM-Albuquerque Office of Equal Opportunity Position*

On April 18, 2012, Defendant Ramos wrote to Plaintiff formally offering Plaintiff

employment with UNM as an Equal Opportunity Specialist in the Office of Equal Opportunity.

Response, Doc. No. 59-6; Reply Doc. No. 60-2. The April 18, 2012 letter provides terms and

conditions of Plaintiff's UNM employment, including a "Start Date" of April 30, 2012, a

"Probationary Period End Date" of October 29, 2012, and a "Term End Date" of June 30, 2013.

*Id.* The April 18, 2012 letter states that, as a term of employment, "[a]ll UNM staff members

must successfully complete a probationary period." *Id.* Above the signature lines, the letter

recites that by signing and returning the letter to Defendant Ramos, the employee's signature

"indicates your understanding that this offer of employment and continuation of your

employment is dependent, in part, on the terms and conditions in this letter and continued

satisfactory performance." The letter contains signatures of Defendant Ramos and Plaintiff. *Id.*

---

[6]Although Rule 56 was amended in 2010, courts still emphasize the need for parties to present admissible evidence in support of a motion for summary judgment. *See, e.g., In re Vaughn*, No. 12 Civ. 411 JAP/SMV, 2013 WL 2476375 at *2 (D.N.M. Jan. 22, 2013) (unpublished) ("The Court may grant summary judgment if the facts supported by admissible evidence of record show that there is no genuine issue of material fact . . . ."); *Jones v. McHugh*, No. 12–CV–2681–DDC–TJJ, 2014 WL 3107996 at *2 (D. Kan. July 8, 2014) ("It is well settled that a Court can consider only admissible evidence in reviewing a motion for summary judgment") (citation omitted). *But see Mitchell v. Zia Park*, 842 F. Supp. 2d 1316, 1321 (D.N.M. 2012) (concluding that, while the Tenth Circuit Court of Appeals had not yet had an opportunity to opine on the impact of the 2010 changes to Rule 56, "[a]s was true previously, courts can consider evidence [on summary judgment] that is currently in an inadmissible form[,]" unless an objection is made to the form of the document.)

Plaintiff worked for a little over two months and was terminated on July 9, 2012, during her probationary period. The parties dispute whether Plaintiff received training from Ms. Martinez. Plaintiff contends that: 1) she did not receive a UNM Equal Employment Opportunity "office guide[;]" 2) she was not given a tour of the office and instead, was told she could "stand in one spot in the building and look around the office;" 3) Defendant Ramos did not tell Plaintiff to discuss questions or concerns with Defendant Ramos rather than with co-workers; 4) Defendant Ramos told Plaintiff she did not need to attend UNM "Banner Training" on June 25 and 26, 2012 and Plaintiff was excluded from that training; 5) Defendant Ramos yelled at Plaintiff on June 26, 2012, demanded that Plaintiff seek counseling with UNM's Counseling, Assistance and Referral Service, and threatened to write a negative performance review if Plaintiff refused counseling; 6) Defendant Ramos counted Plaintiff's errors at work out loud; and 7) on July 9, 2012, Defendant Ramos told Plaintiff that Defendant Ramos was firing her "because the staff was frustrated with [her.]" Taite Aff. at ¶¶ 3, 5, 6, 8, 9, 10, 11, 23. Plaintiff contends that she met her employer's legitimate job expectations, was on time for work, never missed a day from work, and that her work performance was not evaluated. *Id.* at ¶¶ 8, 31.[7]

Plaintiff identifies two UNM Equal Employment Opportunity employees, Gloria Sands and M. Daniela Wilkins, who worked in Plaintiff's same group, and who were Hispanic or Caucasian, were newly hired employees on probation, and were permitted to work one year

---

[7] One of the two pages of handwritten notes attributed to Defendant Ramos states in part: "Brenda feels doing for her what we need to do," "TVR-concern is follow thru when give feedback," and "both VW + TVR w/ Brenda to review reports." Doc. No. 47-3. Notations on the other page indicate, at most, some concern with Plaintiff's work, but the incomplete sentences are neither entirely clear nor supported by an affidavit from Defendant Ramos. A note supposedly authored by Defendant Ramos on June 25, 2012, states "want her to be successful why giving feedback + opportunity to improve. Not at risk right now but need to help us help her." *Id.* Plaintiff argues that the handwritten notes are "unsworn testimonial documents." Response at 1.

longer than Plaintiff despite errors that Ms. Sands or Ms. Wilkins made. Plaintiff attests that Ms. Sands and Ms. Wilkins were similarly situated to Plaintiff. *Id.* at ¶¶ 13–16, 39.

Plaintiff provides no evidence of direct race discrimination or explicit racial remarks. Instead, she alleges that Defendant Ramos treated her unfairly in comparison to other employees and berated her in the workplace for mistakes. She also alleges that "[i]f Theresa Ramos' perception and allegation is that I displayed serious personal issues it was because I [sic] treated so poorly by her because of my race, African-American." *Id.* at ¶ 36.

The July 9, 2012 termination letter to Plaintiff was signed by Defendant Ramos, in the position of "Acting Director/EEO Compliance Manager." Doc. No. 47-4, Ex. D. The termination letter states that Ms. Ramos is "relieving [Plaintiff] from employment during the probationary period effective at 5:00 p.m. today," under "University Business Policy 3225, paragraph 4, subparagraph 4.1." *Id.*

The termination letter does not give any reasons for Plaintiff's termination. *Id.* In addition, Defendant Ramos does not attach a copy of University Business Policy 3225 or cite its contents. Defendant Ramos does, however, include a single excerpted page from an unidentified policy that states "[a]ll new employees hired into regular positions, . . ., are employed on a probationary basis for the first six (6) calendar months of their employment." Doc. No. 47-1, Ex. A. That page also states that "[a]n employee may be released from employment during the probationary period with or without cause in accordance with '**Separation of Employment' Policy 3225, UBP.**" *Id.* (emphasis in original).

On July 10, 2012, one day after her termination, Plaintiff filed an EEOC charge against UNM; she amended the July 10, 2012 EEOC charge on August 27, 2012. Doc. No. 59-4. The parties did not attach copies of any EEOC charges to the summary judgment briefing.

B.      *UNM-Gallup Contract Teaching Position*

In an email dated August 16, 2012, to Plaintiff from Teresa J. Wilkins, Ph.D., Chair,

Division of Education, Health and Human Services, University of New Mexico, Gallup (UNM-

Gallup), Dr. Wilkins wrote that that she enjoyed meeting Plaintiff and suggested that Plaintiff

apply for a temporary part-time faculty position with health careers at UNM-Gallup. Doc. No.

59-3. Dr. Wilkins wrote that Ann Jarvis would be contacting Plaintiff to teach for UNM-Gallup.

Several August 20, 2012 emails confirm that Ms. Jarvis and Plaintiff were working out a

schedule for Plaintiff to teach "Medical Terminology" at UNM-Gallup and that Ms. Jarvis had

reviewed Plaintiff's resume, apparently believing Plaintiff was qualified to teach "Medical

Terminology." *Id.* On August 24, 2012, Plaintiff appeared for work at the UNM-Gallup campus

but was told that UNM-Gallup could not hire her because she was not qualified. Taite Aff. at

¶ 24. After some confusion and also after Plaintiff retained counsel, Plaintiff apparently began

working at UNM-Gallup on September 17, 2012. *Id.* at ¶¶ 27, 30, 32.

Plaintiff asserts that Defendant Ramos attempted to prevent UNM-Gallup from hiring

her. *Id.* at ¶ 28. Defendant Ramos contends that Plaintiff mistakenly applied for the wrong

position while using UNM's online application process. However, the August 31, 2012 email

Defendant Ramos cites in support of this statement is not entirely clear. Doc. No. 47-6. Plaintiff

apparently taught at UNM-Gallup on at least one date and then claimed she did not receive a

paycheck on September 30, 2012, at which time she filed another EEOC charge, a copy of which

was not provided. Plaintiff attributed the delay in receiving her September 30, 2012 paycheck to

Defendant Ramos, who she believed was retaliating against her for filing the July 10, 2012

EEOC charge. *Id.* at 34. Defendant Ramos alleges that there was a payroll "glitch" involving

some 400 individuals, including Plaintiff, and that Defendant Ramos had nothing to do with the payroll problem or delay in paying Plaintiff.

As best as the Court can determine, Plaintiff eventually received the September 30, 2012 paycheck, about which she had complained. While not clear, it also appears that Plaintiff did not renew her contract with UNM-Gallup. There are no allegations to the contrary.

## III.   Discussion

### A.   *Summary Judgment as to 42 U.S.C. § 1983 Racial Discrimination and Retaliation Claims*

"The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the heavy burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir.2009)). The plaintiff must establish 1) that the defendant violated a constitutional or statutory right, and 2) that the right was clearly established at the time of the defendant's conduct. *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). This Court maintains the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

In order for the law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must

have found the [right] to be as the plaintiff maintains." *Eidson v. Owens*, 515 F.3d 1139, 1148 (10th Cir. 2008) (internal quotation marks omitted). A previous decision need not be "materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196–97 (10th Cir. 2010) (internal quotation marks omitted).

        1.     Section 1983 Race Discrimination Claim Against Defendant Ramos in her Individual Capacity

        a.     <u>Clearly Established Right</u>

Plaintiff's right to be free from racial discrimination was clearly established at the time of her employment with UNM. Civil Rights Act of 1964 § 703(a)(1), 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer to . . . discharge any individual . . . because of such individual's race . . . ."). *See Dasgupta v. Harris*, 407 F. App'x 325, 331 (10th Cir. 2011) (the law was clearly established as early as 1996 that racial discrimination was unlawful in the workplace).

        b.     <u>Violation of Right</u>

The next question is whether the facts shown by Plaintiff make out a violation of her right to be free from racial discrimination in the workplace. "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir.2008) (citation omitted). To establish a prima facie case of racial discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) qualification for the position; (3) an adverse employment action, and (4) disparate treatment among similarly situated employees or less favorable treatment than others not in the protected class. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149

(10th Cir. 2005). Although the prima facie elements may differ slightly from case to case, "[t]he critical prima facie inquiry in all discrimination cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (citation and quotations omitted).

When a plaintiff does not have direct evidence of discrimination, as is true in this case, the plaintiff may create an inference of unlawful discrimination through the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under *McDonnell Douglas*, once the plaintiff establishes a prima facie case of racial discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for taking an adverse employment action against the plaintiff. If the defendant succeeds in meeting its burden of production, the burden returns to the plaintiff to put forth evidence sufficient to allow a jury to find that the defendant's articulated reason for the adverse employment action was pretextual or unworthy of belief because of incoherence, weaknesses, inconsistencies, or contradictions. *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1038–39 (10th Cir. 2011).

(1)     Membership in protected class and adverse action

It is undisputed that Plaintiff is African American, and that her termination constitutes an adverse employment action. *See Faragalla*, 411 F. App'x at 156 (listing adverse employment actions including firing). In viewing the factual record and inferences therefrom in the light most favorable to the non-movant, Plaintiff has raised genuine disputes of material fact with respect to the following, contested elements of a prima facie case of race discrimination.

(2)      Qualification for position

The parties disagree whether Plaintiff was qualified for her position or satisfactorily performed her work, but Plaintiff provides affidavit testimony that she was meeting her employer's legitimate job expectations, never missed a day of work, and always showed up early to work. Taite Aff. at ¶ 4. Plaintiff further avers that Defendant Ramos never reviewed Plaintiff's performance, cannot produce any performance documents that Plaintiff signed, and told Plaintiff that Defendant Ramos was firing her because staff was frustrated with Plaintiff rather than because of unsatisfactory work performance. *Id.* at ¶¶ 23, 31, 32. Defendant Ramos produced no actual performance documents from Plaintiff's personnel file, no performance reviews of Plaintiff's work, and no evidence to support the position that Plaintiff was terminated due to performance problems. *See* Motion for Summary Judgment; Reply.

Plaintiff's affidavit concerning her work performance is somewhat contradictory because Plaintiff admits she made mistakes at work, accuses Defendant Ramos of pointing out multiple errors Plaintiff made, and concedes she received no training. Plaintiff's concessions might lead to the conclusion that Plaintiff was not performing satisfactorily. However, the Court must decide all inferences from the facts in the non-movant's favor and, therefore, concludes there are genuine disputes of fact as to Plaintiff's work performance.

(3)      Disparate treatment among similarly situated employees

The parties also dispute whether there were similarly situated employees, outside the protected category, whom Defendant Ramos treated more favorably. Again, Plaintiff identifies two employees by name who she contends were similarly situated and whom Defendant Ramos treated more favorably. In her Reply, Defendant Ramos states "[a]s set forth in Defendant's motion, there was no other employee in Plaintiff's workgroup who, during the term of his or her

14

probation, required as much training as Plaintiff, demonstrated the same or similar inability and

unwillingness as Plaintiff to conform her performance and behavior to her supervisor's

expectations, and who failed, as Plaintiff did, to follow direct instructions from her supervisor."

Reply at 8–9. Defendant Ramos produces no sworn testimony to support these arguments.

Indeed, there is no evidence that Defendant Ramos was Plaintiff's supervisor or that Plaintiff's

supervisor had specific expectations that Plaintiff did not satisfy.

A defendant is not required to support its summary judgment motion with evidence

negating the plaintiff's prima facie case of discrimination. *Bui v. IBP, Inc,* 34 F. App'x 653, 654

(10th Cir. 2002) (unpublished) (citations omitted). However, Plaintiff has shown, albeit with thin

evidence, that her termination "occurred under circumstances which give rise to an inference of

unlawful discrimination." *See Plotke,* 405 F.3d at 1100.  Because Plaintiff has raised genuine

disputes of fact with respect to a prima facie case of race discrimination, the burden shifts to

Defendant Ramos to articulate a legitimate, non-discriminatory reason for terminating Plaintiff.

(4)     Legitimate, non-discriminatory reason for termination decision

Defendant Ramos argues that she had the discretion to make "individualized and

subjective personnel decisions based on the behavior and performance of a probationary

employee." Motion for Summary Judgment at 12. However, Defendant Ramos provides only

argument of counsel in support of this statement. Defendant Ramos further contends that

"Plaintiff had a documented history of performance problems during her short history" at UNM,

but again there is no evidence, other than Ms. Martinez's handwritten notes consisting of

numerous sentence fragments, to support counsel's argument.[8] *Id.* 13. Defendant Ramos also

---

[8]For example, Ms. Martinez's notes state "Training w/ Brenda 3 hours," "Training w/ Brenda Taite 3:00-
5:00," "Training w/ Brenda," "Training with Brenda T + Gloria 10-12:00," Mtg w/ Brenda re: Key points
of search Cmt. Mtg to discuss w/TVR," Worked w/ Brenda T. re# HP – review JM/not Disp/ SI/DRA."

asserts that she "has submitted overwhelming, undisputed evidence that her decision to terminate

Plaintiff was done solely on the basis of Plaintiff's failure to perform at an adequate level."

Reply at 8. But, Defendant Ramos does not cite to the "overwhelming evidence" and instead,

appears to refer to argument of counsel. It is well settled that argument of counsel is not evidence

sufficient to support or defeat summary judgment. *Pinkerton v. Colo. Dep't. of Transp.,* 563 F.3d

1052, 1061 (10th Cir. 2009).

Defendant Ramos' conclusory assertions made through argument of counsel do not

satisfy her burden of articulating a legitimate, non-discriminatory reason for the termination

decision. In drawing all reasonable inferences and resolving all factual disputes in favor of the

non-moving party, the Court concludes that Plaintiff has raised genuine disputes of material facts

with respect to whether Defendant Ramos violated Plaintiff's right to be free from racial

discrimination in the workplace. Accordingly, the Court will deny Defendant Ramos request for

qualified immunity as to the § 1983 race discrimination claim.

2.     Section 1983 Retaliation Claim Against Defendant Ramos in her Individual
Capacity

"It has long been clearly established that the First Amendment bars retaliation for

protected speech and [political] association." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836,

848 (10th Cir. 2005). However, Plaintiff does not bring a First Amendment retaliation claim.

Instead, Plaintiff alleges retaliation under two other theories: 1) violation of Title VII;[9] and 2)

deprivation of her Fourteenth Amendment rights under 42 U.S.C. § 1983.

---

The notes are not on any official UNM letterhead, do not appear to be part of an employee's personnel
file, and are not entirely clear. Doc. No. 47-2, pp. 1-17.

[9] As noted in the 9/25/14 Order, the Court allowed Plaintiff's Title VII race discrimination and retaliation
claims against Defendants in their official capacities to proceed, and dismissed the §§ 1981 and 1983 race
discrimination and retaliation claims against Defendants in their official capacities. 9/25/14 Order at 10-
11.

With respect to Plaintiff's § 1983 retaliation claim against Defendant Ramos in her individual capacity, the Court determines that Defendant Ramos is entitled to qualified immunity. The Tenth Circuit Court of Appeals observed that "a theory of liability under federal law for retaliatory conduct . . . does not give rise to a viable claim under Section 1985 [or Section 1983], and instead supports only a Title VII claim." *Starrett v. Wadley*, 876 F.2d 808, 817 n.12 (10th Cir. 1989) (quoting *Long v. Laramie Cnty Cmty. Coll. Dist.*, 840 F.2d 743, 752 (10th Cir.), *cert. denied*, 488 U.S. 825 (1988)). Thus, because there is no clearly established right under § 1983 to be free from retaliation, Plaintiff cannot satisfy both prongs of the "strict two-part test" to defeat Defendant Ramos' assertion of qualified immunity. *See Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1236–37 (8th Cir. 2013) (holding that defendant was entitled to qualified immunity on an equal protection claim for retaliation under § 1983 because there was no established right under the equal protection clause to be free from retaliation). Accordingly, the Court will grant qualified immunity to Defendant Ramos on Plaintiff's § 1983 retaliation claim.

B.    *Summary Judgment as to 42 U.S.C. § 1981 Race Discrimination and Retaliation Claims*

1.    Section 1981 Race Discrimination Claim Against Defendant Ramos in her Individual Capacity

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 prohibits intentional racial discrimination which affects "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The statutory protection applies in both the public and private sectors. 42 U.S.C. § 1981(b); *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 459–60 (1975). Section 1981

"offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475–76 (2006). A plaintiff may prove a violation of § 1981 either by direct evidence or by circumstantial evidence of discrimination through the *McDonnell Douglas* analysis. *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

Plaintiff alleges that Defendant Ramos discriminated against her based on race and that the discrimination impaired an existing contractual relationship. Plaintiff must prove the same prima facie elements whether she brings a racial discrimination claim under Title VII, § 1981, or § 1983. *Baca v. Sklar,* 398 F.3d 1210 (10th Cir. 2005). For the same reasons stated above in reference to Plaintiff's § 1983 race discrimination claim, the Court concludes that Plaintiff has raised genuine disputes of material fact regarding a prima facie case of § 1981 race discrimination.

Defendant Ramos does not seek qualified immunity on Plaintiff's § 1981 claims, and instead, argues that she is entitled to summary judgment on the § 1981 claims. Motion for Summary Judgment at 14–16. Defendant Ramos again must present a legitimate, non-discriminatory reason for the termination decision.

Defendant Ramos contends that "[t]he factual circumstances surrounding Plaintiff's termination are indisputable – the only question remaining is the legal question of whether the facts as stated by the Plaintiff constitute a violation of her rights pursuant to Section 1981." *Id.* at 15. Defendant Ramos summarily asserts that she "had legitimate, business-related and non-discriminatory reasons for taking certain actions against Plaintiff, including to terminate her." *Id.* at 16. In her Reply, Defendant Ramos argues that she has shown "through undisputed evidence

that Ms. Taite was not performing at an acceptable level, despite numerous coaching and training efforts by UNM staff." Reply at 9.

As already noted, the Court finds that Defendant Ramos' assertions, made through argument of counsel, do not satisfy her burden in articulating a legitimate, non-discriminatory reason for the termination decision. Defense counsel's argument that Defendant Ramos acted with non-discriminatory reasons is not the same as introducing admissible evidence demonstrating Defendant Ramos acted with legitimate, non-discriminatory reasons. Defendant's meager evidence of a co-worker's scribbled ambiguous notes about Plaintiff's training do not suffice. Therefore, the Court will deny Defendant Ramos' request for summary judgment on Plaintiff's § 1981 race discrimination claim.

    2.    Section 1981 Retaliation Claim Against Defendant Ramos in her
          Individual Capacity

To set forth a prima facie case of § 1981 retaliation, Plaintiff must show that 1) she engaged in protected activity; 2) she suffered a materially adverse employment action; and 3) a causal connection exists between her protected activity and the adverse employment action. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).

Neither party briefed the retaliation claim or analyzed its elements. As best as the Court can determine, Plaintiff can demonstrate that she engaged in protected activity by filing EEOC charges against UNM and/or Defendant Ramos and that she suffered an adverse employment action when her employment was terminated. However, even construing the facts in favor of Plaintiff, there is no evidence that Plaintiff's protected activity in filing EEOC charges caused her employment termination. It is undisputed that Plaintiff filed the first EEOC charge on July 10, 2012, the day after Defendant Ramos terminated her employment. Thus, the July 10, 2012 EEOC charge could not have led to the July 9, 2012 termination of Plaintiff's employment.

With respect to her subsequent UNM-Gallup employment, Plaintiff did not present evidence of a materially adverse employment action. An adverse employment action "must be materially adverse to the employee's job status. . . . An adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Duncan v. Manager, Dep't of Safety, City and Cnty of Denver,* 397 F.3d 1300, 1314 (10th Cir. 2005).

The undisputed material facts are that UNM-Gallup decided to hire Plaintiff in a temporary or contract teaching position, beginning on August 27, 2012. There was a short delay in Plaintiff's start date at UNM Gallup, but she began teaching on about September 17, 2012, rather than August 27, 2012. Plaintiff's September 30, 2012 paycheck was late, but apparently she eventually received it. Plaintiff provides no argument or evidence that she was discharged from the position with UNM-Gallup. Instead, it appears that Plaintiff stopped teaching at UNM-Gallup on her own volition.

Thus, there is no evidence of a "materially adverse employment action" with respect to Plaintiff's employment at UNM-Gallup. Although Plaintiff may have missed teaching a few classes due to a three-week delay in her start date and did not receive one paycheck on the scheduled pay date, these alleged actions do not constitute significant changes in job status. *See, e.g., Thomas v. Compuware Corp.,* 105 F. App'x 60, 64–65 (6th Cir. July 23, 2004) (finding that a late but retroactive pay raise that the employee subjectively believed was less than she deserved did not constitute a "materially adverse employment action").

Plaintiff does not provide evidence that any protected activities subjected her to a materially adverse employment action. Because there are no genuine disputes of material fact

20

sufficient for a jury to decide with respect to the § 1981 retaliation claim, it must be dismissed. Accordingly, the Court will grant Defendant Ramos' request for summary judgment as to Plaintiff's § 1981 retaliation claim.

### Conclusion

The Court will deny Defendant Ramos' request for qualified immunity or summary judgment as to Plaintiff's 42 U.S.C. §§ 1981 and 1983 race discrimination claims due to genuine disputes of material fact. Thus, the race discrimination claims against Defendant Ramos in her individual capacity will proceed. The Court will grant Defendant Ramos' request for qualified immunity or summary judgment as to Plaintiff's 42 U.S.C. §§ 1981 and 1983 retaliation claims. The retaliation claims will be dismissed, with prejudice.

The Court reaches no ruling on a possible hostile work environment claim brought under 42 U.S.C. § 1983. The Court disregards arguments by the parties concerning a Fourteenth Amendment procedural due process claim or a Fourteenth Amendment Equal Protection Clause claim because those claims are not set forth in Plaintiff's Amended Complaint.

IT IS ORDERED that DEFENDANT THERESA RAMOS' MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 47) is GRANTED as to 1. Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims of retaliation (Count 3) against Defendant Ramos, in her individual capacity, and those claims will be DISMISSED, with prejudice; and is DENIED as to 2. Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims of race discrimination (Count 3) against Defendant Ramos, in her individual capacity, and those claims will proceed.

_____

SENIOR UNITED STATES DISTRICT JUDGE